AYRES, Judge.
This is a suit by plaintiff, a duly licensed surveyor, for the recovery of actual costs and expenses of making a survey of a certain tract or parcel of land, comprising 400 acres, more or less, located in Franklin Parish, Louisiana. The defendants are A. K. Kilpatrick, Woodlawn Development Corporation, hereinafter referred to as Woodlawn, and Dewitt Smith, who were allegedly associated in a joint venture of purchasing, surveying and selling said property. Alternatively, plaintiff alleged that Kilpatrick, at the beginning, and Wood-lawn, subsequently in the proceedings were principals, with Smith as their agent, and as such are obligated for the payment of his services, and, further alternatively, that Smith was liable individually, either on contract or quantum meruit. Plaintiff’s claim is based upon an agreement purporting to have been entered into, in two telephone calls made by Smith to plaintiff’s *171 office, with his assistant in charge of his surveying operations.
All three defendants denied the existence of any joint venture, Kilpatrick and Wood-lawn contending that Kilpatrick simply bought the aforesaid property and sold it to Woodlawn and that Woodlawn simply purchased the property from Kilpatrick. Both denied having directly or indirectly employed plaintiff to make a survey of said property or that Smith was in any capacity acting as their agent relative thereto.
Smith answered and stated that he was contacted by Kilpatrick when Kilpatrick was negotiating for the purchase of the property; that he, without having made any arrangements or having acquired any interest whatsoever in connection with said property or any sale thereof, was with Kil-patrick when the latter visited and inspected said property with the view of purchasing the same. Lurking in his mind, however, was the hope that he might he able to assist in the resale of said property and be compensated for his services, in which connection he sought information from plaintiff’s office as to whether or not a survey of the property could be made by plaintiff and at what cost, which information he was unable to obtain and he thereafter dismissed the subject altogether; that Kilpktrick sold the property as a whole to Woodlawn Development Corporation and that he assisted in its resale by Wood-lawn without pay or compensation because of financial obligations due Woodlawn in connection with other projects and property situated in Florida and Alabama. Smith particularly denied that he entered into any contract with plaintiff or his representative for the surveying of said property or that he directed plaintiff to proceed with such survey, contending that the sum and substance of his conversation was limited to the procuring of information as to when a survey could be made and as to the cost thereof; further, that he knew nothing of the survey having been made until about the time the last of the property had been sold by Woodlawn, and that the survey was of no use or benefit and was not used by him. In the alternative, defendant plead that plaintiff’s claim was excessive, unreasonable and out of proportion to the services allegedly performed.
The trial judge concluded that the transaction did not involve a joint venture between the defendants or that Smith was the agent of either Kilpatrick or Wood-lawn Development Corporation, but found that Smith had ordered the survey made. Accordingly, judgment was rendered in favor of plaintiff and against the defendant, Smith, for the sum of $1,333, as prayed for, but his demands, as to the other defendants, were rejected.
From the judgment thus rendered and signed, only the defendant, Smith, has appealed. The question of liability of Kil-patrick and Woodlawn has, therefore, been foreclosed so far as this appeal is concerned. The liability vel non of the defendant, Smith, is the sole .question submitted for determination.
When Kilpatrick began negotiations for purchasing this property, the fee ownership was in these parties and in the following proportionate interests:
Jones-O’Brien, Inc..■. 12.50%
J. M. Hazlewood.• 25.00%
Nemours Corporation. 12.50%
Donald M. Reese.'. 5.00%
V. S. Parham . 5.00%
John M. Halko. 7.50%
C. W. Sharp. 32.50%,
with 50% of the mineral ownership in said parties, the other 50% mineral ownership being in Mrs. Catherine Greer Munk and Mrs. Elizabeth Greer Norvell, less lie minerals on the E% of NWj4, Section 19 of said tract conveyed by Mrs. Munk and Mrs. Norvell to James M. Forgotson. The royalty ownership was the same as the mineral ownership except C. W. Sharp had conveyed %20 royalty interest to Clifford Mooers, trustee for Maria Dolores Mooers, all of which was subject to a mineral lease of June 5, 1945, granted tp James M. For-gotson.
*172 On the occasion of a visit to Baton Rouge Kilpatrick was contacted by C. W. Sharpj one of said owners and who was apparently in charge of said property, and was offered said property for a price of $25 per acre. On "returning to Monroe, Kilpatrick visited the property and entered into negotiations with the aforesaid owners, with the view of purchasing said property. An agreement was reached, whereby this property was sold to Kilpatrick for $9,000. Accordingly, a deed was executed to Kilpatrick and attached to a draft for the ..purchase. .price and forwarded to Ouachita National Bank for delivery to Kilpatrick after approval of title and payment of the draft.
Prior to consummating the deal, negotiations were begun between Kilpatrick and Woodlawn, through L. M. Ray as its presi-, dent, for the, purchase of said property by that corporation. An agreement was reached between thejn whereby Woodlawn purchased the property from Kilpatrick, and, in consideration therefor, paid the draft of the former purchasers drawn on Kilpatrick and executed in favor of Kil-patrick a promissory note for $2,500. This sum may be said to represent Kilpatrick’s profit.
Thereafter, Smith assisted Woodlawn in selling said property, in tracts. of either 40 or 80 acres each, to eight local residents. Smith likewise assisted in the sale of the timber on said land in the same manner by procuring a purchaser. For his services Smith received no specific compensation other than in consideration of advances theretofore made him to the extent of approximately $2,400 as expenses in connection with transactions already referred to concerning property located in south Alabama and northern Florida.
We have referred to these facts as established by the record for the purpose of throwing some light, if they do, upon the question now before us as to whether or not defendant Smith ordered and directed a survey of the property in his individual capacity, if, indeed, such a survey was ordered, and, in any event, whether or not he incurred any personal liability in that regard. The record, in our opinion, shows conclusively, and it is not contended otherwise, that Smith neither had, nor acquired, any interest in this property by virtue of any of these transactions; at the time, he was not the agent of either Kilpatrick or Woodlawn. It was only after Wood-lawn acquired the property that his services were engaged in its resale. There is no basis on which to claim that Smith had an interest in the property to justify his ordering a survey for his own use and benefit. It is urged that it would appear most unreasonable to conclude that plaintiff would have undertaken the costly services performed without some assurance of payment from a responsible source. It would appear, however, just, as inconceivable, and unreasonable to conclude that defendant would have, on his own initiative and personal responsibility, ordered and directed a survey of the property-in which he was wholly without interest. These assumptions, offsetting or balancing one another, are insufficient to establish liability on the part of defendant.
Necessarily, therefore, if .Smith is to be held individually liable, his liability must be established through the aid of additional proof. On that phase, plaintiff relies upon the establishment of a contract by the two telephone conversations between defendant Smith and his associate, Glen Baker. Only these two were in possession of first-hand information as to the nature and object of these conversations. It is apparently conceded that no agreement was entered into by virtue of the first conversation. There is considerable controversy, however, as to the nature of the second conversation, Baker contending that Smith insisted that the survey be proceeded with without delay, and as adamant to the contrary is the testimony of .Smith, who emphatically denied that he authorized Baker to make this survey. Whatever was intended to be accomplished by the telephone conversations, we are not convinced that the evidence preponderates to the effect that Smith was obligating himself or that Baker so understood at the time. Too, it may be observed that Smith did not give Baker a descrip *173 tion of the property and he denies that he advised that a description could' be obtained from Benjamin I. Berry, an attorney of Winnsboro, from whom plaintiff, claims the description was obtained for the purpose of making the survey.' It is noteworthy, also, that Berry examined the title to this property and addressed his title opinion to C. W. Sharp and J. M. Hazlewood, % Ouachita National Bank, Monroe, Louisiana, in which he stated:
“Gentlemen:
“In connection with your proposed transaction covering your property in Franklin Parish, I hand you herewith my, title opinion on said property, * iji ' * »
The testimony of neither Sharp, Hazlewood nor Berry was taken to explain Berry’s connection with this transaction or his employment to examine the title or the circumstances surrounding the -giving of the description to Baker for the purpose of the survey, particularly as it appears that Smith did not know Berry until after the survey had been made. Berry experienced some difficulty in obtaining payment for his title examination. However, Woodlawn finally paid the charges inasmuch as Berry’s opinion was used by the bank’s attorney in approving title in Woodlawn in connection with its application for a loan.
Plaintiff experienced similar confusion in determining to whom it should present its bill for the survey. Eventually, upon Berry’s representation that his fee was being paid by Woodlawn, that corporation was billed for plaintiff’s services, and payment being refused, both Kilpatrick and Smith were contacted, when payment was again refused. Whereupon this suit followed. The language of plaintiff’s petition and the many alternatives upon which the claim is based are indicative of plaintiff’s indecisive position as to the real ob-ligor.
The burden of proof to establish its claim by a clear preponderance is upon plaintiff. Notwithstanding the opinion of our learned brother of the District Court to the contrary, we' are unable to conclude that plaintiff has supported its'demands as against this defendant to that degree' of certainty as -would warrant á judgment against him. We are not unmindful -of the reluctance of appellate courts to reverse a trial court upon questions of fact. Where, however, our consideration and appreciation of the record convinces us of a different-result, we are justified -in the -conclusion that manifest error has been committed, whereupon it- becomes- our duty and obligation to render such judgment--as," in our opinion, is warranted by. the proof adduced in the case.
For the reasons herein assigned, the judgment appealed is annulled, avoided, reversed and set aside, and, accordingly, plaintiff-appellee’s demands are , rejected and his suit is dismissed at his cost.
- Reversed.